Filed 11/21/25  P. v. Ortega CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B337138 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. |
| | XCNBA223548 |
| JUAN MANUEL ORTEGA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Charlaine F. Olmedo, Judge.  Reversed and remanded for a new evidentiary hearing.

Steven Schorr, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Seth P. McCutcheon and Chelsea Zaragoza, Deputy Attorneys General, for Plaintiff and Respondent.

In 2004, a jury convicted Defendant-Appellant Juan Manuel Ortega of three counts of carjacking, two counts of kidnapping, and two counts of murder.  The evidence adduced at Ortega's trial indicated that Ortega and his co-perpetrators committed these offenses during and shortly after an arranged drug deal.  Years later, Ortega petitioned the trial court for relief under former Penal Code section 1170.95 (now section 1172.6).[1]

After holding an evidentiary hearing, the trial court denied Ortega relief under section 1172.6, subdivision (d), concluding, beyond a reasonable doubt, that he is still guilty of murder under current law (1) as a direct aider and abettor in the murders who harbored express malice; and (2) as a major participant in the underlying felonies who acted with reckless indifference to human life.

On appeal, Ortega argues that the trial court's ineligibility findings are unsupported by substantial evidence.  He also contends that the trial court committed reversible error by improperly considering inadmissible gang evidence.  He lastly argues that his case must be remanded for a new evidentiary hearing because the trial court misunderstood the scope of its role as independent factfinder.

We agree with Ortega's latter contention.  It appears the trial court, in finding that Ortega is guilty of murder under current law, misunderstood that its role as independent fact finder entailed weighing witness credibility.  We therefore remand the matter for a new evidentiary hearing under section 1172.6, subdivision (d).  At that evidentiary hearing, Ortega may

---

[1]     All undesignated statutory references are to the Penal Code.

2

again raise any contention regarding witness credibility, which the trial court must then rule on in deciding whether Ortega is guilty of murder under current law.

## PROCEDURAL BACKGROUND

In 2004, a jury convicted Ortega of two counts of murder (§ 187, subd. (a)); three counts of carjacking (§ 215, subd. (a)); and two counts of kidnapping (§ 207, subd. (a)). The jury also found true special circumstance allegations (§ 190.2, subds. (a)(3) & (a)(17)), allegations that a principal personally and intentionally discharged a firearm causing death (§ 12022.52, subds. (b)-(d), (e)(1)), and criminal street gang allegations (§ 186.22, subd. (b)(1)). The trial court sentenced Ortega to life without the possibility of parole plus 165 years to life in state prison. In 2006, on direct appeal, a different panel of this court reversed and ordered stricken the gang enhancements imposed under section 186.22, subdivision (b), revised the abstract of judgment in various ways, and affirmed the judgment in all other respects. (*People v. Ortega* (Mar. 30, 2006, B173836) [nonpub. opn.] (*Ortega I*).)[2]

In 2019, Ortega filed a petition for resentencing under former section 1170.95. The trial court summarily denied Ortega relief, concluding that the jury's true findings under the felony-

---

[2] The court struck the enhancements because they required a finding that the defendant personally used a firearm, but at trial, the prosecution had conceded that the evidence was insufficient to put personal use allegations before the jury, and the jury had only found that a principal used a firearm. (*Ortega I, supra*, B173836.) We take judicial notice of our opinion in *Ortega I*. (Evid. Code, § 452, subd. (d).)

3

murder special circumstance statute (§ 190.2, subd. (a)(17)) rendered him ineligible for relief as a matter of law. On appeal, a different panel of this court remanded the case to the trial court with directions to issue an order to show cause and hold an evidentiary hearing under section 1172.6, subdivision (d). (*People v. Ortega* (June 17, 2022, B311073) [nonpub. opn.] (*Ortega II*).)[3]

On remand, as mentioned above, after holding an evidentiary hearing, the trial court denied Ortega relief, concluding that he is still guilty of murder under current law (1) as a direct aider and abettor in the murders who harbored express malice; and (2) as a major participant in the underlying felonies who acted with reckless indifference to human life. Ortega timely appealed.

## TRIAL COURT'S RULINGS

For the sake of brevity, rather than providing a full recitation of the factual background, we instead provide the trial court's stated reasons for denying Ortega relief, which contain a concise summary of the relevant facts necessary to resolve this appeal. We note at the outset, that from our review of the record, it appears much of the evidence the trial court relied on in

---

[3] The basis for this court's decision was its conclusion that a jury's true finding under the felony-murder special circumstance statute, made before the Supreme Court decided *People v. Banks* (2015) 61 Cal.4th 788 (*Banks*) and *People v. Clark* (2016) 63 Cal.4th 522 (*Clark*), cannot preclude eligibility for section 1172.6 relief as a matter of law. Shortly after this court issued its decision in *Ortega II*, our Supreme Court reached that same conclusion in *People v. Strong* (2022) 13 Cal.5th 698. We need not take judicial notice of our opinion in *Ortega II* because it is contained in the current appellate record.

4

denying Ortega relief came directly from the testimony of witness Ivan Sanchez.[4]  And, as discussed in greater detail below, the trial court declined to consider the issue of Sanchez's credibility in exercising its role as independent factfinder under section 1172.6, subdivision (d).

The trial court explained its reasons for concluding Ortega is guilty of murder under current law as follows:

> As an independent fact finder, I find the People have met their burden of proof by establishing beyond a reasonable doubt that [Ortega] is a direct aider and abettor . . . to the murders of Pleitez and Nolasco and that he harbored express malice.
>
> I find [Ortega] was involved in every stage of the commission of the murders including the following:
>
> [Ortega] was part of a group of supposed drug dealers that were going to engage in a drug sale but rather planned to rob the buyers of their money;
>
> In the course of that plan, [Ortega], along with his codefendants,[5] met with the victims in one location and

---

[4]     Sanchez initially told police that his name was Juan Perez. The parties also referred to him as Juan Perez throughout Ortega's trial.  In keeping with the practice adopted by this court in *Ortega II* and by the trial court on remand, we will refer to him as Ivan Sanchez.

[5]     As the parties note, Ortega was prosecuted alone.

5

lured them to a second location more isolated to facilitate the crimes of conviction;

[Ortega], at the more isolated location, directly accosted, carjacked, and kidnapped the victims. [Ortega] did so in planned coordination with his codefendants evidenced re [sic] planning and sophistication, and he did so while personally armed. He did so while directly placing his gun to Sanchez's head and threatening to kill him and, thus, directly established his express malice to aid and abet the murders of the potential buyers.

[Ortega] further physically and personally put his hands on Sanchez's body to check him for weapons to ensure the success of the plan of [Ortega] and codefendants and while, at the same time, he was armed and threatening to kill Sanchez.

[Ortega], in coordination with the second armed individual, got into the victim's car and kidnapped Nolasco and Pleitez, a fact that is corroborated by [Ortega]'s print present in Sanchez's car.

[Ortega] was the driver to commit the carjacking and the kidnapping.

The codefendant's car followed behind. All of these actions were taken without [Ortega] and codefendants giving orders to each other or communicating what they were doing to each other, thus, establishing that all of these

6

actions were preplanned and were contemplated by all involved in a scheme to rob the potential buyers.

Thus, I find [Ortega] attacked the victims, kidnapped the victims, carjacked the victims knowing his codefendants were going to kidnap, carjack, and rob the victims and knowing . . . he and at least one of his codefendants had multiple guns on scene, planned to and threatened to use the guns to kill the victims, and, furthermore, [Ortega] had a specific role in this preplanned drug sale/rip-off of disarming the victims, threatening to kill the victims to get their compliance, isolating the victims to ensure their success, and driving away with the victims' car to complete their crimes followed by the co-defendant.

Alternatively, as an independent fact finder, I find beyond a reasonable doubt that [Ortega] was a major participant under the *Banks* factors who acted with reckless indifference to human life under the *Clark* factors.

[Ortega] was an integral member of the drug sale rip-off, carjacking, and kidnapping.  He was present at most if not all stages of the drug rip-off, carjacking, and kidnapping; he was armed, he stole the victims' car, and he kidnapped the victims.  His actions were necessary and an integral [part] of all of the crimes of conviction including the murders.

7

## DISCUSSION

## I.    Remand for a new evidentiary hearing is warranted

Prior to the evidentiary hearing, Ortega's trial counsel filed a brief raising various contentions that Ortega is not guilty of murder under current law.  One of those arguments was that Sanchez was an unreliable witness, and accordingly, his testimony should be given little weight.  In support of this position, trial counsel noted, among other things, that Sanchez used a false name when reporting his abduction to the police, and did not tell the police that he had been participating in a drug deal when the incident occurred.[6]  Trial counsel thus argued that, because Sanchez was the prosecution's primary witness, and because he was not credible, the evidence tying Ortega to the murders was "attenuated at best."

At the evidentiary hearing, although the trial court stated it was "sitting as an independent factfinder," the court also indicated that it did not believe this role encompassed weighing witness credibility.  It said: "With regard to . . . challenges to the sufficiency of the evidence and/or asking this court to re-weigh the credibility of witnesses, this is not a retrial.  And this case, because it's pending an OSC evidentiary hearing, the OSC evidentiary hearing is limited to the inquiry of whether or not defendant could still be prosecuted under a viable theory of liability."  Quoting *People v. Farfan* (2021) 71 Cal.App.5th 942, 947, the trial court added that filing a section 1172.6 petition

---

[6]    Ortega's trial counsel likewise raised other arguments regarding Sanchez's credibility, as does Ortega's appellate counsel, but we need not recount all those arguments now.  On remand, Ortega's trial counsel may again raise any arguments regarding Sanchez's credibility at the new evidentiary hearing.

"does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings." The court thus concluded that Ortega could not "attack the credibility of witnesses" in a subdivision (d)(3) proceeding to obtain "a do-over on factual disputes that have already been resolved."

It is not entirely clear to this court what the trial court meant when it stated that the question of Sanchez's credibility had already been resolved by the jury at Ortega's initial trial. The record of Ortega's murder trial contains no express indication of the exact extent to which the jury found Sanchez's testimony credible or not credible in convicting Ortega of murder in 2004. We therefore conclude that the trial court erred by declining to assess Sanchez's credibility in finding Ortega guilty of murder under current law.

The trial court's role at the evidentiary hearing "is to act as an independent fact finder and determine, in the first instance, whether the petitioner committed murder under the law as amended by Senate Bill No. 1437." (*People v. Guiffreda* (2023) 87 Cal.App.5th 112, 123.) The statute's "plain language shows the People are required to establish the defendant is guilty under current law *as a matter of fact* and beyond a reasonable doubt." (*People v. Clements* (2022) 75 Cal.App.5th 276, 296 (*Clements*).)

"[A] fact finder tasked with holding the People to the beyond a reasonable doubt standard, "must impartially *compare and consider all the evidence* that was received throughout the entire trial ' and determine whether that 'proof . . . leaves [it] with an abiding conviction that the charge is true.' " (*Clements*, *supra*, 75 Cal.App.5th at pp. 294-295, quoting CALCRIM No. 220, italics added; see also § 1096.) Unlike the prima facie stage

where "[t]he trial court should not decide unresolved factual issues [ ] that involve credibility determinations or weighing of evidence," the court "*should decide such issues . . .* after issuing an order to show cause and holding an evidentiary hearing." (*People v. Harden* (2022) 81 Cal.App.5th 45, 51, italics added.)

Although it is "unusual to ask the trial judge to sit as the fact finder and (in some cases) make factual determinations on a cold record," the Legislature adopted the subdivision (d)(3) hearing procedure as an imperfect but adequate compromise between the impracticality of affording qualifying offenders a new trial and the undesirable alternative of not making the "[ameliorative] benefits of the new law available to people already validly convicted under the old law." (*Clements, supra,* 75 Cal.App.5th at p. 297.) By expressly allowing either party "to put on live testimony[,]" the subdivision (d)(3) procedure "allow[s] the trial judge to make credibility determinations based on cues other than consistency and plausibility[.]" (*Ibid.*) If, however, the parties do not put on live testimony, the trial court may nonetheless make credibility determinations by relying on cues such as consistency and plausibility when examining a cold record such as Ortega's. That is what the trial court should have done here given that, as discussed above, it is unclear from the record exactly which aspects of Sanchez's testimony the jury found credible in convicting him of murder under homicide law as it stood in 2004.

The trial court's reliance on *Farfan, supra,* in deciding not to rule on Sanchez's credibility was misplaced. That case involved an appeal from the summary denial of a former section 1170.95 petition. (*Farfan, supra,* 71 Cal.App.5th at p. 946.) The *Farfan* court concluded the record of conviction demonstrated

that the petitioner was ineligible for relief as a matter of law because the jury found he was a major participant who acted with reckless indifference to human life after *Banks* and *Clark* were decided. (*Farfan*, at pp. 947, 955.) The court then rejected Farfan's claim that he had "a constitutional right to a new jury determination that he was a major participant who acted with reckless indifference to human life[,]" noting that the court had already rejected Farfan's substantial evidence argument on direct appeal challenging the jury's *Banks* and *Clark* findings. (*Farfan*, at p. 947.) On this point, the court noted: "The mere filing of a section 1170.95 petition does not afford the petitioner a new opportunity to raise claims of trial error or attack the sufficiency of the evidence supporting the jury's findings." (*Farfan*, at p. 947.) *Farfan* is thus inapplicable because it does not address the extent to which trial courts should assess and rule on witness credibility at subdivision (d)(3) hearings.

The Attorney General raises two arguments why we should affirm the trial court's order denying Ortega relief notwithstanding the court's lack of a ruling on Sanchez's credibility. First, he contends that the trial court did not err, and indeed, explicitly stated that it was acting as independent fact finder when denying Ortega relief. Relatedly, he argues that the trial court reasonably interpreted Ortega's credibility argument as a " 'fundamental challenge[ ] to the sufficiency of the evidence' " rather than a challenge to "a viable theory of liability that still exists today." We reject these arguments. As explained, in our review of the record, the trial court did not perform its role as independent fact finder by weighing Sanchez's credibility.

Second, the Attorney General contends that, even assuming the trial court erred by not deciding the issue of Sanchez's

11

credibility, that purported error was harmless under *People v. Watson* (1956) 46 Cal.2d 818, 836.  Specifically, the Attorney General argues that the record shows Sanchez was indeed credible, and the record contains other circumstantial evidence corroborating Sanchez's testimony and supporting the trial court's conclusion that Ortega is guilty of murder under current law.  We are concerned, however, that if we were to weigh these factual matters on appeal now, we would improperly bypass the procedures enacted by the Legislature under subdivision (d)(3), which afford Ortega the right to a proper trial court evidentiary hearing in the first instance.  We therefore conclude that the proper remedy is a remand for a new evidentiary hearing under subdivision (d)(3).  At that hearing, Ortega may again raise arguments concerning Sanchez's credibility, which the trial court is directed to rule on in determining whether Ortega is guilty of murder under current law.[7]

Because we conclude that remand for a new evidentiary hearing is warranted, we need not address Ortega's arguments that the trial court's ineligibility findings are unsupported by substantial evidence.

---

[7]     To the extent Ortega implicitly asks this court to direct the trial court to weigh the credibility of Sanchez's testimony unrelated to whether he is guilty of murder under current law, we decline that request.  As the trial court correctly noted, this is not a retrial of the entire case.  The trial court is not charged with determining whether Ortega is guilty of carjacking or kidnapping, the felonies underlying his murder convictions.  It is only charged with determining whether Ortega is guilty of murder under current law.  (See § 1172.6, subd. (d)(3).)

## II.   The trial court's alleged consideration of gang evidence

Ortega argued in the trial court that various gang evidence admitted at his 2004 trial should be deemed inadmissible at his subdivision (d)(3) hearing.  The trial court rejected Ortega's arguments and concluded that it could consider the gang evidence in deciding whether Ortega is guilty of murder under current law.  In particular, the court concluded that Ortega's membership in the Lincoln Heights gang, a gang that was apparently involved in narcotics sales, was relevant and admissible to prove his motive, intent, and identity.  On appeal, the parties dispute whether the trial court's ruling on the admissibility of the gang evidence was erroneous.  In its actual stated reasons for denying Ortega relief, however, the trial court makes no mention of the gang evidence.  Instead, the court relied almost entirely on Ortega's conduct in the commission of the carjackings/kidnappings/murders as described by Sanchez's eyewitness testimony.  It thus does not appear that the trial court actually relied on the gang evidence in denying Ortega section 1172.6 relief.  Given that the trial court apparently did not rely on the gang evidence in denying relief, and because we are remanding the case for a new evidentiary hearing, we decline at this juncture to comment on which of the gang evidence should or should not have been admitted.  On remand, the parties may again raise arguments concerning the admissibility of any gang evidence, then, if the trial court intends to rely on any gang evidence, it should rule on which of the evidence is relevant and admissible under current law.  (See § 1172.6, subd. (d)(3).)

## DISPOSITION

We reverse the order denying Ortega relief and remand the matter for a new evidentiary hearing under section 1172.6, subdivision (d).  We express no opinion on the ultimate outcome of those proceedings.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

TAMZARIAN, J.

We concur:

ZUKIN, P. J.

VAN ROOYEN, J.*

---

\*    Judge of the San Luis Obispo Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

14